# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

RYAN WILLIAM BUCHHEIM,

        Defendant.

No. 17-CR-84-LRR

**REPORT AND RECOMMENDATION
TO DENY DEFENDANT'S MOTION
TO SUPPRESS**

---

## I.    INTRODUCTION

The matter before the Court is defendant's Motion to Suppress Evidence. (Doc. 16). The grand jury charged defendant in a one-count indictment with Possession with Intent to Distribute Methamphetamine in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A). (Doc. 2). The charge arose from evidence found during a traffic stop of defendant's car on March 16, 2017. Defendant argues that the officer unduly prolonged the traffic stop for the purposes of conducting a canine search of defendant's car, in violation of the Fourth Amendment, citing the Supreme Court's holding in *Rodriguez v. United States*, 135 S.Ct. 1609 (2015). The Honorable Linda R. Reade, United States District Court Judge, referred the motion to me for a Report and Recommendation. On Friday, December 15, 2017, I held an evidentiary hearing at which Cedar Rapids Police Officers Mitchell Magill and Chris Carton testified. The Court also admitted without objection government's Exhibit 1 (a video from Officer Carton's car) and defendant's Exhibits A (the speeding citation) and B (a call for service report).

For the reasons that follow, I respectfully recommend that the Court deny defendant's motion to suppress.

## II.    FINDINGS OF FACT

On the night of March 16, 2017, Cedar Rapids Police Investigator Mitchell Magill was on patrol in an unmarked police car as part of a Mobile Assistance Team, which was tasked with assisting in any crime that required investigation and performing routine patrol duties.  At approximately 9:00 PM, Investigator Magill drove by defendant's residence on 18th Avenue SW, in Cedar Rapids.  Investigator Magill saw defendant's car parked outside.  Although Investigator Magill was aware of tips indicating defendant was involved in distributing methamphetamine, he did not see anything that made him believe that criminal activity was occurring at that time.

Investigator Magill then picked up his partner, Investigator Bryan Garringer; at some point they drove past defendant's house a second time and found that defendant's car was no longer parked at the residence.  The investigators observed defendant's car a few minutes later on Wilson Avenue, which was only a short distance from defendant's residence.  The investigators were able to eventually get behind defendant's car as defendant drove down the on-ramp to northbound Interstate 380.  The investigators followed in their car.

Over the course of the next few miles Investigator Magill was able to use his trained observation and pacing to estimate defendant's speed.  Investigator Magill determined that defendant was exceeding the speed limit by driving 68 miles per hour in a zone with a 55 miles per hour speed limit.[1]  When defendant exited the interstate at H Avenue, Investigator Magill initiated a stop of defendant's car by activating the lights on his patrol car.  Defendant pulled over in a timely manner.  The stop was made a 9:37 PM.  Exhibit B.

---

[1] Investigator Magill's car was not equipped with radar or cameras, nor did he have a body camera or any other recording device on him.

Investigator Magill got out of his car, approached defendant's car, and engaged in a conversation with defendant. Investigator Magill asked for defendant's driver's license and insurance and asked if defendant knew how fast defendant was driving. Defendant admitted driving 61 miles per hour and acknowledged knowing the speed limit was 55 miles per hour. Investigator Magill looked at the insurance document provided by defendant and saw that it was expired. Defendant looked in his wallet and was able to produce an insurance card that was not expired. Investigator Magill then returned to his police car and, using his onboard computer, checked to determine if defendant's license was valid, whether the car was properly registered, and whether there were any warrants pending for defendant. Investigator Magill verified that defendant's license was valid, the car was properly registered, and there were no pending warrants. Investigator Magill was unable, however, to actually process a speeding citation because his car's computer was not equipped with the necessary program.

In the meantime, Officer Jacob Briley arrived at the scene as backup. Officer Briley's police car was equipped with a computer program for processing speeding tickets. Investigator Magill used Officer Briley's computer to process defendant's ticket. Investigator Magill logged into the program at 9:40 PM to begin processing the ticket.[2] Exhibit A.

At about the same time Investigator Magill began processing the ticket, Investigator Garringer called for a canine unit to come to the scene to conduct a free-air sniff.[3] In response, Officer Chris Carton arrived at the scene at approximately 9:48 PM.

---

[2] Investigator Magill testified that the program automatically populates the time that appears on the form when the document is opened to begin the processing of the ticket.

[3] This time is based on the testimony of Officer Carton, which was based on Officer Carton's report of when he received the call from dispatch. As such, the call from Investigator Garringer to dispatch may have occurred shortly before Officer Carton received directions from dispatch to go to the scene.

At 9:49 PM, Officer Carton retrieved his canine partner from the car and spoke with Investigator Garringer. Officer Carton then took his canine partner to the front of defendant's car to begin the free-air sniff. Investigator Magill had completed the paperwork in Officer Briley's car at about this same time and asked defendant to step out of his car so that the canine could perform its work. While the canine conducted the free-air sniff, Investigator Magill began to present the citation to defendant, explained it to him, and obtained defendant's signature acknowledging receipt of the ticket.

Meanwhile, Officer Carton started the search, directing his canine from the front of defendant's car along the driver's side of the car. The canine stopped at the driver's side door and indicated the presence of controlled substances. Officer Carton indicated that this occurred within ten to fifteen seconds after he began the search. On the video from Officer Carton's squad car (Exhibit 1), the canine search is not visible (Officer Carton's squad car is parked behind Officer Briley's car, which has flashing lights). I could hear what sounded like Investigator Magill discussing the ticket with defendant at approximately 9:50 PM. At approximately 9:51 PM, Officer Carton returned his canine partner to his squad car. Investigator Magill testified that he was advised of the positive indication by the canine by another officer while Investigator Magill was still in the process of issuing the speeding ticket to defendant.

Officer Carton testified that the canine's indication of the presence of controlled substances gave him probable cause to search defendant's car. He and other officers proceeded to search defendant's car. Officers found packages of methamphetamine in the trunk. Based on the evidence from the traffic stop, officers obtained a search warrant for defendant's residence. Additional incriminating evidence was found at defendant's residence.

At the hearing, Investigator Magill testified that he has been a law enforcement officer for ten years and an investigator for nine months. During his time as an

investigator, Investigator Magill has processed only two or three speeding tickets, but previously processed many more as a patrol officer. When asked if he had processed more than one hundred, Investigator Magill testified that he could not estimate how many tickets he has written in the past. Investigator Magill testified that it typically takes fifteen to twenty minutes to issue a speeding ticket, especially when, as here, he lacked the software on his computer and had to wait for another officer to arrive at the scene. Investigator Magill testified that the canine search did not delay his issuance of the speeding ticket in any way and that he did not intentionally delay issuing the speeding ticket in order to allow time for the canine search.

## III.    ANALYSIS

As a preliminary matter, it is important to point out the narrow scope of the Fourth Amendment issue before the Court. Defendant does not contest that officers had a reasonable articulable suspicion to believe that he was speeding and therefore does not challenged the legality of the traffic stop itself. The government does not contend that at the time of the stop, or at any point prior to the canine's indication, Investigator Magill had any reasonable articulable suspicion to believe defendant was engaged in other criminal activity; this suspicion arose only when the canine indicated the presence of controlled substances. Thus, the government does not claim it had any justifiable reason to detain defendant beyond the time necessary to issue a speeding ticket. Defendant does not contest the legality of the canine search itself or the qualifications of the canine or its handler. The government does not dispute that if the search of the car is found to violate the Fourth Amendment, then the evidence from both defendant's car and residence must be suppressed. In short, the narrow issue before the Court is whether officers unduly delayed the issuance of the speeding ticket. *Rodriguez*, 135 S. Ct. at 1614.

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. "[R]easonableness is

always the touchstone of Fourth Amendment analysis." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2186 (2016). A traffic stop is a Fourth Amendment seizure of the driver. *Brendlin v. California*, 551 U.S. 249, 251 (2007). The duration of a traffic stop is reasonable if it lasts no longer than is reasonably necessary to effectuate the purpose of the stop. *Rodriguez*, 135 S. Ct. at 1614 (2015). "Following a traffic stop, police officers may conduct a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." *United States v. Roberts*, 687 F.3d 1096, 1099 (8th Cir. 2012) (citation and internal quotation marks omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriquez*, 135 S. Ct. at 1614.

Police, however, are not precluded from conducting unrelated investigations, such as a dog sniff, during an ordinary roadside detention. In *Rodriguez*, the Supreme Court held that the critical inquiry in determining the reasonableness of an unrelated investigation is whether conducting the investigation "prolongs" the stop beyond the "time reasonably required to complete [the stop's] mission." *Rodriguez*, 135 S. Ct. at 1616 (alteration in original) (citation and internal quotation marks omitted). "The seizure remains lawful only 'so long as [unrelated] inquiries do not *measurably extend* the duration of the stop.'" *See Rodriguez*, 135 S. Ct. at 1615 (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)) (alteration in original) (emphasis added). In addition, "it [is] appropriate to examine whether the police diligently pursued" the purpose of the stop. *Id.* at 1614 (alteration in original) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)).

Considering the totality of the circumstances in this case, I find that Investigator Magill diligently pursued the purpose of the traffic stop—that is, the issuance of a speeding ticket. I further find that the canine search did not unreasonably delay the

issuance of that speeding ticket. Indeed, I find that the canine search had no impact whatsoever on Investigator Magill's processing of the speeding ticket. I found investigator Magill to be a credible witness. He testified that processing speeding tickets commonly takes fifteen to twenty minutes especially when, as here, the processing of the ticket is impaired by lacking software on his car's computer. I also found him credible when he directly testified that he did not delay the processing of the ticket to allow time for a canine search. The timeline of the event shows that Investigator Magill began the computer program for issuing a ticket at 9:40 PM. Within eight minutes, at 9:48 PM, Officer Carton arrived at the scene. Within ten minutes, at 9:50 PM, Officer Carton was conducting the canine search as Investigator Magill was presenting the speeding ticket to defendant. Nothing in the record suggests that the canine search in any way delayed the processing of the speeding ticket.

In *United States v. Feuhrer*, 844 F.3d 767, 773 (8th Cir. 2016), a police officer asked the defendant to sit in the patrol car while he completed paperwork. A second officer then conducted a canine sniff search. *Id.* After a very brief analysis, the Eighth Circuit Court of Appeals held that *Rodriguez* was not violated because "there [was] no evidence that the dog sniff unlawfully prolonged the traffic stop beyond what was necessary to complete the stop." *Id.*[4] Similarly, in this case, one officer processed the speeding ticket while other officers requested and conducted the canine search.

At the hearing, defendant was unable to point to any evidence that contradicted Investigator Magill's testimony regarding the average length of time it takes to process a

---

[4] The *Feuhrer* Court also distinguished *Rodriguez* on the fact that in *Rodriguez*, the officers issued a warning *before* conducting the canine sniff, whereas the *Feuhrer* officers had not yet issued a citation at the time of the sniff. *Fuehrer*, 844 F.3d at 773. However, the *Rodriguez* Court specifically held that "whether the dog sniff occurs before or after the officer issues a ticket" does not determine whether the seizure was constitutional. 135 S. Ct. at 1616.

speeding ticket,[5] or to show that Investigator Magill did anything to delay the processing of the ticket in this instance. Defendant argued that the Court should consider the pretextual nature of the traffic stop in concluding that Investigator Magill likely delayed the processing of the speeding ticket. Generally, an officer's subjective intent is irrelevant to a Fourth Amendment analysis. *See Wren v. United States*, 517 U.S. 806, 813 (1996) (holding that an officer's subjective intentions for conducting a traffic stop "play no role in ordinary, probable-cause Fourth Amendment analysis"). At most, a court may consider pretext as bearing on an officer's credibility. In this case, however, I found Investigator Magill credible, even taking into account a possible motive on his part to delay the processing of the speeding ticket.

At the hearing, defendant also argued that the Court should conclude there was unreasonable delay in the processing of the speeding ticket because of coincidental timing. Specifically, defendant pointed out that Investigator Magill began processing the speeding ticket at 9:40 PM, which is about the same time the drug dog was requested. In defendant's view, it is suspect that Investigator Magill happened to finish processing the ticket just as the canine search began. It would constitute pure speculation for the Court to reach any conclusion from the timing alone. There is nothing in this record that demonstrates that Investigator Magill was unreasonably slow in processing the speeding ticket.

---

[5] I note that the time estimate appears consistent with other cases in our district where the Court did not find unreasonable delay. *See, e.g.*, *United States v. Geary*, No. CR09-2023, 2010 WL 667916, at *6 (N.D. Iowa Feb. 22, 2010) (processing of traffic ticket took approximately twelve minutes); *United States v. Bowman*, No. CR10-0024, 2010 WL 2266417, at *5 (N.D. Iowa Jun. 3, 2010) (processing of traffic ticket took approximately fifteen minutes); *United States v. Maldonado-Gutierrez*, CR06-4054-DEO, 2006 WL 2413705, at *4 (N.D. Iowa Aug. 22, 2006) (processing of traffic ticket took approximately twenty-one minutes).

## IV.  CONCLUSION

Therefore, for the reasons set forth above, I respectfully recommend that the Court deny defendant's Motion to Suppress.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* FED. R. CRIM. P. 59.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 18th day of December, 2017.

_____

C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa