**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>RYAN WILLIAM BUCHHEIM,<br><br>        Defendant. | No. 17-CR-84-LRR<br><br>**ORDER** |

*TABLE OF CONTENTS*

*I.    INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.   RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . *2*

*III.  STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.  RELEVANT FACTUAL BACKGROUND*. . . . . . . . . . . . . . . . . . . . . *4*

*V.   ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

     *A.   Report and Recommendation* . . . . . . . . . . . . . . . . . . . . . . . . *6*
          *1.    Objection 1: Judge Williams's recommendation* . . . . . . . . . . *7*
          *2.    Objection 2: Diligent pursuit* . . . . . . . . . . . . . . . . . . . *7*
          *3.    Objection 3: Unreasonable delay*. . . . . . . . . . . . . . . . . . *8*
          *4.    Objection 4: Investigator Magill's credibility* . . . . . . . . . . . *9*
          *5.    Objection 5: Delaying the speeding ticket* . . . . . . . . . . . . *10*
          *6.    Objection 6: Processing the speeding ticket* . . . . . . . . . . . *10*
          *7.    Objection 7: Investigator Magill's motive* . . . . . . . . . . . . *11*
          *8.    Objection 8: Unreasonably slow* . . . . . . . . . . . . . . . . . *12*
          *9.    Objection 9: Judge Williams's conclusion*. . . . . . . . . . . . . *12*
     *B.   Supplemental Report and Recommendation* . . . . . . . . . . . . . . . *13*
          *1.    Objection 1: Diligent performance.* . . . . . . . . . . . . . . . . *13*
          *2.    Objection 2: Investigator Magill's truthfulness* . . . . . . . . . *14*
          *3.    Objection 3: The TraCS system* . . . . . . . . . . . . . . . . . *16*
          *4.    Objection 4: Investigator Magill's motive* . . . . . . . . . . . . *17*
          *5.    Objection 5: Judge Williams's conclusion*. . . . . . . . . . . . . *18*

*VI.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

## I. INTRODUCTION

The matters before the court are Defendant Ryan William Buchheim's Objections (docket no. 38) to United States Chief Magistrate Judge C.J. Williams's Report and Recommendation (docket no. 28) and Defendant's Supplemental Objections ("Supplemental Objections") (docket no. 62) to Judge Williams's Supplemental Report and Recommendation (docket no. 57). In both the Report and Recommendation and the Supplemental Report and Recommendation, Judge Williams recommends that the court deny Defendant's "Motion to Suppress Evidence" ("Motion") (docket no. 16).

## II. RELEVANT PROCEDURAL BACKGROUND

On October 18, 2017, a grand jury returned an Indictment (docket no. 2) charging Defendant with one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 851. On November 28, 2017, Defendant filed the Motion. On December 5, 2017, the government filed a Resistance (docket no. 20). On December 15, 2017, Judge Williams held a hearing ("Hearing") on the Motion. *See* December 15, 2017 Minute Entry (docket no. 26). Defendant appeared in court with his attorneys, Alfred Willett and Dillon Besser. Assistant United States Attorneys Drew Inman and Patrick Reinert represented the government. On December 18, 2018, Judge Williams issued the Report and Recommendation, which recommends that the court deny the Motion. On January 1, 2018, Defendant filed the Objections. On January 8, 2018, the government filed a Response (docket no. 41). On January 9, 2018, Defendant filed a Reply (docket no. 42).

On January 12, 2018, Defendant filed a Motion to Reopen the Suppression Hearing (docket no. 44), citing newly discovered evidence. On January 19, 2018, the government filed a Resistance (docket no. 46). On January 22, 2018, Defendant filed a Reply (docket no. 48). On February 9, 2018, Judge Williams held a supplemental hearing ("Supplemental Hearing") on the Motion to consider the newly discovered evidence. *See*

2

February 9, 2018 Minute Entry (docket no. 53). Defendant appeared in court with his attorneys, Alfred Willett and Dillon Besser. Assistant United States Attorney Emily Nydle represented the government. On February 13, 2018, Judge Williams issued the Supplemental Report and Recommendation, which recommends that the court deny the Motion. On February 27, 2018, Defendant filed the Supplemental Objections. The matter is fully submitted and ready for decision.

### III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation and the Supplemental Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND[1]

On March 16, 2017, at approximately 9:37 p.m., Cedar Rapids Police Department ("CRPD") Investigator Mitchell Magill observed Defendant speeding and initiated a traffic stop. Investigator Magill was on patrol in an unmarked unit, along with CRPD Investigator Bryan Garringer. Investigator Magill detained Defendant at approximately 9:37 p.m. Investigator Magill was able to perform most of the routine duties involved in a traffic stop using Investigator Garringer's computer, but was unable to create the speeding ticket because the computer was not equipped with TraCS, the program that generates tickets. CRPD Officer Jacob Briley, who was on patrol in the area, subsequently arrived on the scene as a backup unit. Officer Briley's police car was equipped with TraCS. Investigator Magill used Officer Briley's computer to create the ticket.

TraCS is a computer program that aids police officers in creating traffic tickets. By scanning a motorist's driver's license, an officer can connect to a statewide database and receive the driver's information. TraCS automatically fills out a large portion of the traffic ticket for the officer so that he or she need not manually fill out each field. Some of the automatically-generated information, such as the time of the offense, can be changed by the officer before the ticket is finalized. TraCS also creates a time stamp when an officer begins writing a ticket. This time stamp cannot be changed by the officer. Investigator Magill has had limited experience with TraCS because his duties do not frequently involve the issuance of traffic tickets. At the Hearing, Investigator Magill testified that he began writing the ticket at 9:40 p.m., which is listed as the time of offense on the ticket. At the

---

[1] After reviewing the Hearing Transcript (docket no. 36) and the Supplemental Hearing Transcript (docket no. 59), the court finds that Judge Williams accurately and thoroughly set forth the relevant facts in the Report and Recommendation and the Supplemental Report and Recommendation. *See* Report and Recommendation at 2-5; Supplemental Report and Recommendation at 2-11. Therefore, the court shall only briefly summarize the facts here. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

Supplemental Hearing, Investigator Magill testified that he began writing the ticket at 9:44 p.m., as indicated by the automatically-generated time stamp, but manually entered 9:40 p.m. on the ticket as an estimate of when the violation had occurred.

While Investigator Magill was conducting the routine procedures of a traffic stop, Investigator Garringer called for a canine unit to perform a free-air sniff of Defendant's vehicle. CRPD Officer Chris Carton began the free-air sniff with his canine partner at 9:49 p.m. and concluded it by 9:51 p.m. While the free-air sniff was underway, Investigator Magill was completing the traffic ticket and explaining the ticket to Defendant. While explaining the traffic ticket, Investigator Magill was advised that the canine had alerted to the presence of narcotics in Defendant's vehicle. Thereupon, Defendant was further detained while officers searched his vehicle. Officers found packages of methamphetamine in the trunk of Defendant's vehicle.

## V. ANALYSIS

Judge Williams correctly noted that the scope of the issue in the Motion is narrow. *See* Report and Recommendation at 5. Defendant admits that Investigator Magill had probable cause to believe that Defendant had committed a speeding violation and, therefore, does not challenge the legality of the traffic stop. *See* Brief in Support of Motion (docket no. 16-3) at 5. The government does not contend that law enforcement had any legal grounds to detain Defendant other than the speeding violation. *See* Resistance at 4-7. The United States Supreme Court has established that law enforcement may conduct a free-air canine sniff during a routine traffic stop provided that doing so does not extend or prolong the detention of the motorist. *See Rodriguez v. United States*, 575 U.S. __, __, 135 S. Ct. 1609, 1615-16 (2015) (noting that the critical issue is whether conducting the free-air sniff prolongs the stop). Neither party contests this legal principle. *See* Motion at 2; Resistance at 5-6. Thus, the sole issue in the Motion is whether law enforcement extended the detention of Defendant during the traffic stop in order to conduct

the free-air sniff. In both the Report and Recommendation and the Supplemental Report and Recommendation, Judge Williams found that they did not and, therefore, he recommends that the court deny the Motion. *See* Report and Recommendation at 9; Supplemental Report and Recommendation at 11. The court now conducts a de novo review of the disputed portions of Judge Williams's recommendations.

### A. *Report and Recommendation*

Defendant raises nine objections to the Report and Recommendation. Defendant objects generally to Judge Williams's recommendation that the court deny the Motion. Objections at 3-4. Defendant objects to Judge Williams's finding that Investigator Magill diligently pursued the purpose of the traffic stop. *Id*. at 4-5. Defendant objects to Judge Williams's finding that the free-air sniff did not unreasonably delay the issuance of the speeding ticket. *Id*. at 5-6. Defendant objects to Judge Williams's finding that Investigator Magill was a credible witness. *Id*. at 6-7. Defendant objects to Judge Williams's finding that nothing in the record suggests that the free-air sniff delayed the processing of the speeding ticket. *Id*. at 8. Defendant objects to Judge Williams's finding that Defendant was unable to point to any evidence contradicting Investigator Magill's testimony regarding the average time it takes to process a speeding ticket. *Id*. at 8. Defendant objects to Judge Williams's finding that Investigator Magill was a credible witness, even taking into account a possible motive on his part to delay processing the speeding ticket. *Id*. at 9-10. Defendant objects to Judge Williams's finding that nothing in the record demonstrates that Investigator Magill was unreasonably slow in processing the speeding ticket. *Id*. at 10. Finally, Defendant again objects generally to Judge Williams's recommendation that the court deny the Motion. *Id*. at 12-13. The court shall address each objection in turn.

1. *Objection 1: Judge Williams's recommendation*

Defendant objects generally to Judge Williams's recommendation that the court deny the Motion. *Id*. at 3-4. Defendant offers no specific argument in support of his objection, but instead states that the Motion should be granted "[b]ased upon the subsequent objections, facts, and legal authorities" contained elsewhere in the Objections. *Id*. at 4. By failing to make a specific objection, and by failing to brief and argue the objection, Defendant has waived his right to a de novo review of this objection. *See Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990) (noting that "objections must be timely and specific to trigger de novo review by the District Court of any portion of the magistrate's report and recommendation"); *see also Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989); *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) ("Frivolous, conclusive or general objections need not be considered by the district court." (quotation omitted)). The court shall overrule this objection for the reasons it shall overrule Defendant's subsequent objections.

2. *Objection 2: Diligent pursuit*

Defendant objects to Judge Williams's finding that "Investigator Magill diligently pursued the purpose of the traffic stop—that is, the issuance of a speeding ticket." Report and Recommendation at 6. Defendant provides no specific argument as to how Investigator Magill failed to diligently pursue the purpose of the traffic stop, but instead merely recites the timeline of the traffic stop as it was testified to at the Hearing. *See* Objections at 4-5. Defendant notes that "Investigator Magill had no idea what time it was when he presented the ticket to [Defendant]." *Id*. at 4.

Upon a de novo review of the Hearing Transcript and the Supplemental Hearing Transcript, the court finds that Investigator Magill did diligently pursue the purpose of the traffic stop. Investigator Magill testified that, in his experience, it takes fifteen to twenty minutes to issue a speeding ticket. Hearing Transcript at 12-13. The CRPD report of

Investigator Garringer's call for a canine unit establishes that law enforcement stopped Defendant's vehicle at 9:37 p.m. *See* Exhibit B (docket no. 27-2). Investigator Magill lacked the necessary equipment to issue the ticket and had to wait for Officer Briley to arrive. *See* Hearing Transcript at 11. Investigator Magill began writing the ticket at 9:44 p.m. *See* Supplemental Hearing Transcript at 2. Officer Carton had completed the free-air sniff by 9:51 p.m., at which time Investigator Magill was still in the process of issuing the ticket. *See* Hearing Transcript at 41. Nothing in the record indicates that Investigator Magill did anything to delay the issuance of the speeding ticket or that he worked unusually slowly. Officer Carton and his canine partner completed the free-air sniff approximately fourteen minutes after the stop began, within the typical length of a traffic stop. Therefore, the court shall overrule this objection.

### 3. *Objection 3: Unreasonable delay*

Defendant objects to Judge Williams's finding that "the canine search did not unreasonably delay the issuance of th[e] speeding ticket." Report and Recommendation at 6-7. Defendant further objects to Judge Williams's finding that "the canine search had no impact whatsoever on Investigator Magill's processing of the speeding ticket." *Id.* at 7. Defendant offers no specific argument as to how the canine search unreasonably delayed the traffic stop, nor to how the canine search impacted the processing of the speeding ticket. *See* Objections at 5-6. Instead, Defendant merely recites elements of the timeline as it was testified to at the Hearing. *See id.*

The court finds that the canine search did not unreasonably delay the traffic stop, nor did it impact the processing of the speeding ticket in any way. As stated previously, no evidence indicates that Investigator Magill did anything to delay his processing of the speeding ticket. *See supra* Section V(A)(2). Officer Carton conducted and concluded the free-air sniff while Investigator Magill was processing the speeding ticket and explaining the citation to Defendant. Hearing Transcript at 41. There is nothing in the record to

8

suggest that the free-air sniff interfered with the traffic stop in any way, nor that Investigator Magill slowed the processing of the ticket to allow more time for the free-air sniff. Therefore, the court shall overrule this objection.

### 4. *Objection 4: Investigator Magill's credibility*

Defendant objects to Judge Williams's finding that "[I]nvestigator Magill [was] a credible witness." Report and Recommendation at 7. Defendant, however, makes no specific argument in support of this objection. Objections at 6-7. Instead, Defendant points out that Investigator Magill could not offer specific time frames for the surveillance of Defendant prior to the traffic stop and the investigation of Defendant prior to March 16, 2017. *Id*. at 7. Defendant also notes that the canine unit was called for before Investigator Magill issued the ticket and that nothing during the traffic stop motivated him to call the canine unit. *Id*. Finally, Defendant points out that Investigator Magill testified that he could not remember specifically what he was going to discuss with Defendant when he stated to him, "we can discuss that over here," as heard on the video from Officer Carton's police car. *Id*.

The portions of Investigator Magill's testimony that Defendant cites do not undermine Investigator Magill's credibility. The court finds nothing surprising or suspicious about the fact that Investigator Magill could not remember the specific time he began surveilling Defendant or how long Defendant had been under investigation. Neither of these facts were relevant to the Hearing. The fact that the canine unit was called immediately upon initiating the traffic stop is irrelevant to Investigator Magill's credibility because Investigator Garringer called for it. *See* Hearing Transcript at 10-11. Finally, Defendant's assertion that Investigator Magill could not remember what he was going to discuss with Defendant is slightly misleading. Investigator Magill testified that he could not remember specifically what he was going to discuss with Defendant, but had earlier testified that it would have been about the issuance of the ticket. *Compare* Hearing

9

Transcript at 41 *with* Hearing Transcript at 43. Therefore, the court shall overrule this objection.

Defendant also makes a sub-objection specifically to Judge Williams's finding that Investigator Magill was "credible when he directly testified that he did not delay the processing of the ticket to allow time for a canine search." Report and Recommendation at 7. Defendant offers no new argument for this objection, but instead "adopts his objections to Objection Number 2 and incorporates them as though fully set forth herein." Objections at 7. The court shall overrule this objection for the reasons that it shall overrule Objection 2. *See supra* Section V(A)(2).

### 5. *Objection 5: Delaying the speeding ticket*

Defendant objects to Judge Williams's finding that "[n]othing in the record suggests that the canine search in any way delayed the processing of the speeding ticket." Report and Recommendation at 7. Defendant offers no new argument for this objection, but instead "adopts his objections to Objection Number 2 and Objection Number 3 and incorporates them as though fully set forth herein." Objections at 8. Defendant also states that he "incorporates his arguments summarizing the evidence as though fully set forth herein." *Id*. (citing Hearing Transcript at 67-68). To the extent that this objection rests on arguments made outside of the Objections, the arguments have been waived. *See Thompson*, 897 F.2d at 357-58. To the extent that this objection relies on arguments made in previous objections, the court shall overrule it for the reasons previously stated. *See supra* Section V(A)(2) and Section V(A)(3).

### 6. *Objection 6: Processing the speeding ticket*

Defendant objects to Judge Williams's finding that "[D]efendant was unable to point to any evidence that contradicted Investigator Magill's testimony regarding the average length of time it takes to process a speeding ticket, or to show that Investigator Magill did anything to delay the processing of the ticket in this instance." Report and

Recommendation at 7-8. Defendant offers no new argument for this objection, but instead "adopts his objections to Objection Number 2 and incorporates them as though fully set forth herein." Objections at 8. Defendant also states that he "incorporates his arguments summarizing the evidence as though fully set forth herein." *Id*. (citing Hearing Transcript at 66-67, 69). To the extent that this objection rests on arguments made outside of the Objections, the arguments have been waived. *See Thompson*, 897 F.2d at 357-58. To the extent that this objection relies on arguments made in Objection 2, the court shall overrule it for the reasons previously stated. *See supra* Section V(A)(2).

### 7. *Objection 7: Investigator Magill's motive*

Defendant objects to Judge Williams's finding that Investigator Magill was a credible witness, "even taking into account a possible motive on his part to delay the processing of the speeding ticket." Report and Recommendation at 8. As argument for this objection, "Defendant adopts his objections to Objection Number 4 and incorporates them as though fully set forth herein." Objections at 9. Additionally, Defendant points to a number of facts adduced during the Hearing that he contends establish that the traffic stop was a pretext to execute the canine search, and that the canine search was requested based on the investigators' prior knowledge, not on reasonable suspicion gathered during the traffic stop.

To the extent that this objection relies on arguments made in Objection 4, the court shall overrule this objection for the reasons it shall overrule Objection 4. *See supra* Section V(A)(4). The additional issues raised by Defendant do not undermine Investigator Magill's credibility because they are all lawful police actions. The subjective intentions of a police officer are irrelevant to a Fourth Amendment analysis, and pretextual traffic stops are valid as long as officers have probable cause that a traffic infraction has occurred. *See Whren v. United States*, 517 U.S. 806, 813 (1996). A suspicionless free-air sniff conducted during an otherwise valid traffic stop is lawful as long as it does not extend

or prolong the traffic stop. *See Rodriguez*, 135 S. Ct. at 1615-16. Defendant has offered no evidence that Investigator Magill testified untruthfully. The court maintains its previous finding that Investigator Magill was a credible witness. *See supra* Section V(A)(4). Accordingly, the court shall overrule this objection.

### 8. *Objection 8: Unreasonably slow*

Defendant objects to Judge Williams's finding that "[t]here is nothing in this record that demonstrates that Investigator Magill was unreasonably slow in processing the speeding ticket." Report and Recommendation at 8. Defendant offers no new argument for this objection, but instead "adopts his objections to Objections Number 2 and Number 3 and incorporates them as though fully set forth herein." Objection at 8. The court shall overrule this objection for the reasons it shall overrule Objection 2 and Objection 3. *See supra* Section V(A)(2) and Section V(A)(3).

### 9. *Objection 9: Judge Williams's conclusion*

Defendant again objects generally to Judge Williams's recommendation that the court deny the Motion. *Id*. at 10. Defendant again offers no specific argument in support of his objection, but states that he "adopts his closing arguments summarizing the evidence at the . . . Hearing as though fully set forth herein." Objections at 10 (citing Hearing Transcript at 66-70). Defendant also states, "It is interesting to note that the [c]ourt found an unusual circumstance in the sense that this was an unmarked car without the computer program necessary to write a citation." *Id*. at 11 (citing Hearing Transcript at 75-76).

To the extent that this objection rests on arguments made outside of the Objections, the arguments have been waived. *See Thompson*, 897 F.2d at 357-58. To the extent that this objection relies on arguments made in previous objections, the court shall overrule it for the reasons previously stated. Defendant offers no argument as to why the "unusual circumstance" of Investigator Magill lacking a computer program supports the Motion. Judge Williams cited it as a reason that the traffic stop could reasonably have taken longer

12

than a typical traffic stop. *See* Hearing Transcript at 75-76. Upon de novo review, the court concurs with Judge Williams's analysis. Accordingly, the court shall overrule this objection.

### B. *Supplemental Report and Recommendation*

Defendant raises five objections to the Supplemental Report and Recommendation. Defendant objects to Judge Williams's finding that Investigator Magill diligently performed routine traffic stop inquiries. Supplemental Objections at 4-5. Defendant objects to Judge Williams's finding that Investigator Magill testified truthfully, to the best of his knowledge and understanding, at both hearings. *Id*. at 5-7. Defendant objects to Judge Williams's finding that the TraCS system for tickets would be slower than alternatives. *Id*. at 7-8. Defendant objects to Judge Williams's finding that Investigator Magill lacked any motivation to falsify the citation. *Id*. at 8-9. Finally, Defendant objects generally to Judge Williams's recommendation that the court deny the Motion. *Id*. at 9. The court shall address each objection in turn.

#### 1. *Objection 1: Diligent performance*

Defendant objects to Judge Williams's finding that "Investigator Magill diligently pursued the purpose of the traffic stop—that is, the issuance of a speeding citation." Supplemental Report and Recommendation at 11. Defendant states that "Investigator Magill's inability to explain the purpose of actions in the first eight minutes of the stop show a lack of reasonableness and diverges from the . . . mission of the initial seizure—the traffic stop." Supplemental Objections at 5 (quotation omitted). Defendant points to two facts as "unexplained" in support of his assertion that Investigator Magill was not diligent. First, Defendant states that Investigator Magill ran a query through dispatch, using Investigator Garringer's computer, for an incorrect license plate tag number and never ran a correct one. *Id*. at 4. Second, Defendant states that Investigator Magill unnecessarily

13

repeated the process of running Defendant's information once he began writing the traffic ticket using Officer Briley's computer. *Id*. at 5.

The court finds that Investigator Magill was diligent in conducting the traffic stop and did nothing to intentionally prolong the stop. The two issues Defendant raises are both well explained in the record. CRPD computer-aided dispatch records from March 16, 2017 indicate that when Investigator Magill initially queried dispatch for Defendant's vehicle information, he gave the tag number of EVB040 instead of the correct number of EVB048. *See* Exhibit C (docket no. 55-2), at 1-2; *see also* Supplemental Hearing Transcript at 16. Defendant notes that no additional query came from Officer Garringer's computer for the correct tag number, but this is easily explained by the fact that once Officer Briley arrived, Investigator Magill began using his computer to write the traffic ticket. The additional query from Officer Magill's computer was not a needlessly duplicative search, but rather a correction of an earlier mistake. The court finds that the search of the erroneous tag number was a genuine mistake, as it was a reasonable error and off by only one digit. This conclusion is supported by the additional evidence that another query for the same incorrect tag number was run at 12:09 a.m. and had to be corrected by a subsequent search, hours after any alleged motive to improperly delay the traffic stop would have dissipated. *See* Supplemental Hearing Transcript at 12; Exhibit C at 3-4. Therefore, the court shall overrule this objection.

### 2. *Objection 2: Investigator Magill's truthfulness*

Defendant objects to Judge Williams's finding that "Investigator Magill testified truthfully, to the best of his knowledge and understanding, in both hearings." Supplemental Report and Recommendation at 8. The sole basis for Defendant's assertion that Investigator Magill did not testify truthfully is the inconsistent testimony he gave regarding the time stamp on the traffic ticket. *See* Supplemental Objections at 5-7. At the Hearing, Investigator Magill testified that the traffic ticket contained a time stamp

indicating that he began writing it at 9:40 p.m. Hearing Transcript at 29. He further testified that this time was automatically generated by TraCS and that this was the only time stamp on the document. *Id*. at 29, 41-42. Investigator Magill corrected this testimony at the Supplemental Hearing, stating that the automatically-generated time was 9:44 p.m. and that, although he could not specifically remember doing so, he must have manually entered the time of 9:40 p.m. to better reflect the time of the traffic offense. Supplemental Hearing Transcript at 2-4. Defendant asserts that "Investigator Magill's inconsistencies leave much unanswered." Supplemental Objections at 7.

The court finds that Investigator Magill did testify truthfully, to the best of his knowledge and understanding, at the Hearing and the Supplemental Hearing. Investigator Magill does not use the TraCS program frequently, having written only three tickets in the past year. *See* Supplemental Hearing Transcript at 3. It is understandable that he might make a good-faith error in his testimony regarding how the program works. The court finds nothing suspicious or indicative of deception in Investigator Magill's error. Nor does the court find suspicious the disparity between the two times on the ticket. Clearly, Investigator Magill began writing the ticket at 9:44 p.m., and the court accepts his explanation that he must have altered the manually-entered time to 9:40 p.m. to better reflect the time of the traffic violation.

Moreover, the suggestion that Investigator Magill doctored the ticket and falsified his testimony to cover up his efforts to prolong the traffic stop is illogical. Although the court would still have found that Investigator Magill diligently performed the traffic stop if he had begun writing the ticket at 9:40 p.m., the fact that he began at 9:44 p.m. indicates that he completed processing the ticket even more efficiently. The court finds that Investigator Magill made an honest mistake in his Hearing testimony. Investigator Magill was forthright about the mistake he made once he was alerted to it, and the court finds him to be a credible witness. Therefore, the court shall overrule this objection.

### 3. Objection 3: The TraCS system

Defendant states that he "objects to the finding that the TraCS system . . . would be slower" than alternatives. Supplemental Objections at 7. He states that the court should discount testimony regarding inefficiencies in TraCS because "it does not comport with the system's purpose." *Id*. Defendant cites Exhibit D (docket no. 55-3), a description of TraCS from the Iowa Department of Transportation, for his assertion that TraCS is "designed for quick response and accurate data, providing more efficient completion of the mission of a traffic stop." *Id*. Defendant argues that "Investigator Magill's lack of understanding of a system that has been in place for at least five years should not be held against the Defendant" and that it is not "reasonable for Investigator Magill not to utilize the efficient system that is in place." *Id*. Finally, Defendant argues that "Investigator Magill's inability to adapt to better technology is not reasonable and lacks diligence." *Id*.

Initially, the court notes that Judge Williams did not find that the TraCS system would have been slower than the alternatives. Rather, Judge Williams noted that the testimony indicated that "using the [TraCS] program is not necessarily faster than running criminal history checks through other databases, and, in some cases, may be slower." Supplemental Report and Recommendation at 10. Judge Williams's finding is correct. Investigator Magill and Officer Carton both testified that the TraCS system is not necessarily faster than the alternatives and in some cases can be slower. Supplemental Hearing Transcript at 3, 19. The court credits and accepts their testimony and Judge Williams's finding. Defendant's reliance on Exhibit D is unpersuasive. Exhibit D describes how TraCS was designed to work, not how well it actually works. TraCS would not be the first computer program to work less efficiently than it was designed to. The court is inclined to rely on the testimony of officers who have actually used the program in the field.

Defendant's additional arguments are misplaced. There is nothing in the record to suggest that Investigator Magill does not understand the TraCS system, merely that he has limited experience with it. Nor was there any testimony to support the position that Investigator Magill was unable or unwilling to use TraCS. Clearly he did use the program to create the ticket, but he used an alternative method to run Defendant's criminal history that he believed would be equally efficient. Defendant's objection relies on the premise that TraCS is substantially faster than alternatives and that Investigator Magill knew this and deliberately chose not to use TraCS in order to prolong the traffic stop. The record is devoid of any evidence to support this position. Therefore, the court shall overrule this objection.

### 4. *Objection 4: Investigator Magill's motive*

Defendant objects to Judge Williams's finding "a lack of motive for Investigator Magill to falsify the citation." Supplemental Report and Recommendation at 8. Defendant cites several factors that he argues make it "reasonable to conclude the stop was prolonged for a purpose separate from a speeding violation." Supplemental Objections at 8. Defendant points to the fact that Investigator Magill had been surveilling Defendant for some time before initiating the traffic stop and that a canine unit was called immediately upon detaining Defendant. *Id*. Defendant again argues that Investigator Magill needlessly ran Defendant's information through the system on Officer Briley's computer despite having already done so on Investigator Garringer's. *Id*. Finally, Defendant cites to several portions of the testimony of Joseph McCarville, a CRPD civilian employee who oversees the dispatch center, in which Mr. McCarville was unable to provide answers as to the meaning of certain entries in Exhibit B and Exhibit C. *Id*.

The court finds that Investigator Magill did not have a motive to falsify the citation. The court does so for two reasons. First, as previously discussed, Investigator Magill had no need to prolong the traffic stop because Officer Carton was able to complete the canine

17

search well within the time of an average traffic stop. *See supra* Section V(A)(2). Second, Investigator Magill would not have a motive to make it appear that he began writing the ticket later than he actually did. *See supra* Section V(B)(2). Investigator Magill's prior surveillance of Defendant and the fact that Investigator Garringer immediately called for a canine unit are not relevant. *See supra* Section V(A)(7). Running Defendant's information again on Officer Briley's computer was not a waste of time, but rather was necessary to fix a reasonable mistake. *See supra* Section V(B)(1). Finally, the court notes that Exhibit B and Exhibit C were Defendant's exhibits, and Mr. McCarville was Defendant's witness. The inability of Defendant's witness to explain all of the entries in Defendant's exhibits does not generate an issue warranting suppression of evidence, particularly when, as here, the court is otherwise convinced that the search in question was lawful. Therefore, the court shall overrule this objection.

### 5. *Objection 5: Judge Williams's conclusion*

Defendant objects generally to Judge Williams's recommendation that the court deny the Motion. *See* Supplemental Objections at 9. In support of the objection, "Defendant reiterates his arguments made in . . . his Motion to Suppress, the briefs in support, and the arguments for why the record of the suppression hearing needed to be reopened." *Id*. To the extent that this objection rests on arguments made outside of the Supplemental Objections, the arguments have been waived. *See Thompson*, 897 F.2d at 357-58. To the extent that this objection relies on arguments made in previous objections, the court shall overrule it for the reasons previously stated.

## VI. CONCLUSION

In light of the foregoing, the court **ORDERS**:

(1) The Objections (docket no. 38) are **OVERRULED**;

(2) The Supplemental Objections (docket no. 62) are **OVERRULED**;

(3) The Report and Recommendation (docket no. 28) is **ADOPTED**;

(4) The Supplemental Report and Recommendation (docket no. 57) is **ADOPTED**; and

(5) The Motion to Suppress (docket no. 16) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 11th day of April, 2018.

_____
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA